IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America

Case Nos.:   3:21-cr-00727-JGC-1

Plaintiff,

v.

**ORDER**

Andrew D. Taylor

Defendant.

This is a criminal case in which Defendant Andrew Taylor stands charged with: six

counts of Possession with Intent to Distribute a Controlled Substance, 21 U.S.C. §§

841(a)(1), (b)(1)(A), (b)(1)(C), and (b)(1)(B); one count of Possession of a Firearm in

Furtherance of a Drug Trafficking Crime, 18 U.S.C. § 924(c)(1)(A); and one count of Felon

in Possession of a Firearm, 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Pending is his Motion to

Suppress evidence that Lima, Ohio police officers seized from a shed and house at 1405

Hazel Ave. and a house at 705 Michael Ave., Lima. (Doc. 22). The government opposes the

Motion. (Doc. 23). Following an evidentiary hearing on December 6, 2022, the parties

submitted supplemental briefs. (Docs. 45, 46, and 47).

For the reasons that follow, I deny the Defendant's Motion.

**Background**

At the time of the events leading to the Defendant's indictment and Motion to

suppress, he had been a federal fugitive for about nine years. Per Investigator Aaron

Montgomery's affidavit for a search warrant, after receiving a tip, officers instituted

surveillance on July 2, 2020 of the Defendant's residence at 705 Michael Ave. (Doc. 17-3,

pgID 80).

Eleven days later, on July 13, they saw him leave. He drove to 1405 Hazel Ave. (*Id.*).

Once there, he entered the house through a side door. (*Id.*). Officers watched the premises

while a colleague obtained a search warrant for (and limited to) the Defendant's person.

They also learned about an outstanding federal fugitive warrant. (*Id.*, pgID 79-80).

On July 14, once they had obtained the warrants, they entered the house. (*Id.*, pgID

80). No one was inside. Meanwhile, according to other officers who were outside, they had

seen the Defendant run from a shed. (*Id.*). He left the shed doors open so that the officers

could see its contents in plain view. (*Id.*). The Defendant claims that the doors were closed.

(Doc. 22, pgID 158). In any event, officers took the Defendant into custody. (Doc. 17-3,

pgID 81).

Officer entered the shed and discovered the evidence that Defendant's Motion now

seeks to suppress. (*Id.*). They then obtained search warrants for 1405 Hazel and 705

Michael. (Docs. 23-2 and 23-3). Defendant moves to suppress the items seized during

execution of those warrants and the items observed and seized during the earlier entry into

the shed at 1405 Hazel.

## Discussion

The gravamen of the Defendant's Motion is that the officers' initial search of the shed

was unlawful because the doors were closed. Therefore, the items found there and all the

other evidence later obtained is fruit of the poisonous tree.

The government argues that the Defendant lacks standing to suppress the original

search. Thus, he cannot challenge the use of the evidence obtained from the shed in seeking

to suppress the later warrants for 1405 Hazel and 705 Michael. (Doc. 23, pgID 163).

2

At the Defendant's request, I conducted an evidentiary hearing. The Defendant testified that he owned the 1405 Hazel residence – having bought it from one of his customers he knew as "Mooney" for $30,000 in cash. He further stated that the cash came from drug sales. (Doc. 44, pgID 263). He indicated that he knew Mooney's whereabouts yet did not subpoena him to testify as a witness in this Court. He did not explain why he declined to do so.

Defendant testified that the purchase was pursuant to a verbal agreement. (*Id.*, pgID 260). No documentation supported Defendant's purchase of the premises. No offer to sell, no contact to buy, no deed. There were scant indicia of Defendant's ownership of the property – only a few of Defendant's personal papers that were found in the shed. (Docs. 32, 37, 38, and 39). Defendant proffered no mail addressed to him at the Hazel address; no water, gas, or electric bills or orders to switch those services. No real estate tax notices, bills, or payments. No car registration.

Defendant testified that he stayed overnight in the shed from time to time, but there was no indication that his stays were anything but occasional and unpredictable. (Doc. 44, pgID 255).

The Defendant testified that he had not begun moving his belongings from 705 Michael to 1405 Hazel. This is so, he testified, because he had arranged for a contractor to renovate 1405 Hazel before moving there. (*Id.*, pgID 245, 268). He also testified that he had hired a dumpster to remove debris from the house. (*Id.*). Here, as with regard to the alleged purchase of 1405 Hazel, the Defendant presented no proof beyond his own testimony. He could not remember the name of those with whom he had made those arrangements. (*Id.*, pgID 270-71).

Finally, the Defendant testified that the shed was where he primarily stored the drugs

that he dealt. (*Id.*, pgID 272-73).

The parties agree that the determinative issue is whether I credit the Defendant's

testimony about his ownership interest in 1405 Hazel. If not, he has no standing, as he lacks

a possessory interest in the property and no other legitimate expectation of privacy in it. *See*

*United States v. Whitehead*, 415 F.3d 583, 587-88 (6th Cir. 2005) (finding no reasonable

expectation of privacy where defendant did not own the residence, it was "dilapidated and

unlivable," no evidence linked him to the residence, and the purpose of the house was for

drug transactions); *see also United States v. McMichael*, 369 F. Supp. 2d 898, 902-03 (E.D.

Mich. 2005) (finding no reasonable expectation of privacy where no evidence linked him to

the residence, the purpose of the house was for an illegal drug operation, and he took steps

to distance himself from the property).

I do not credit Defendant's testimony either about his purchase of the property, or its

use as a residence, whether intended or otherwise. All I have is his utterly unsupported

contention that he paid someone names Mooney (but otherwise unidentified) $30,000 in

cash for the house. And his admission that he received no documentation of the transaction.

That is not enough to make it more likely than not that he, in fact, had an ownership interest

in 1405 Hazel.

Additionally, Defendant's choice not to subpoena any witnesses, including Mooney, to

corroborate his ownership of 1405 Hazel weighs against such ownership. *See United States*

*v. Blakemore*, 489 F.2d 193, 195 (6th Cir. 1973) ("An adverse inference is permitted from

the failure of a defendant to call witnesses if they are peculiarly within (his) power to

produce and if their testimony would elucidate the transaction.") (internal citation and

quotations omitted); *see also In re Polyurethane Foam Antitrust Litig. Direct Purchaser Class*, No. 1:10 MD 2196, 2015 WL 12747961, at *16 (N.D. Ohio Mar. 6, 2015) (Zouhary, J.) (same).

Moreover, there is ample reason to believe that his primary real interest in the premises was to conduct his drug operation. As the government points out, someone who primarily uses premises in connection with drug trafficking has no standing to contest a search thereof. *See Minnesota v. Carter*, 525 U.S. 83, 90 (1998); *see also McMichael, supra*, 369 F. Supp. 2d at 902-03. Defendant claims to have purchased the house with drug trafficking proceeds from one of his customers. He admitted that he stored most of the drugs he trafficked in the shed. He admitted that he primarily stayed at 705 Michael. 1405 Hazel was almost completely bereft of any personal effects. Defendant's contention that he spent an occasional night in the shed does not overcome a finding of the property's primary use for drug trafficking.

There is no real reason whatsoever to believe that the Defendant had a legitimate expectation of privacy in 1405 Hazel. Thus, even if he were telling the truth – which I doubt – about the shed doors being closed when the officers arrived, he is not entitled to suppression.

In light of the foregoing, it is hereby

ORDERED THAT the Defendant's Motion to Suppress (Doc. 22) be, and the same hereby is denied.

The Clerk shall forthwith schedule a status/scheduling conference.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge

5